321 Ga. 338
FINAL COPY

S25Y0220. IN THE MATTER OF CHRISTOPHER RYAN
BREAULT.

PER CURIAM.

This is the second appearance before the Court of this disciplinary matter, arising from the conduct of Christopher Ryan Breault (State Bar No. 207142), a member of the State Bar of Georgia since 2013. The conduct underlying this matter occurred while Breault was litigating a personal injury case in the United States District Court for the Southern District of Georgia, resulting in Breault being charged with violating Rules 1.1, 1.6 (a), 1.16 (a) (3) and 3.5 (d) of the Georgia Rules of Professional Conduct ("GRPC") found in Bar Rule 4-102 (d).[1] Following the State Disciplinary Board's filing of a formal complaint against Breault, a Special Master was appointed to oversee the matter. The Special Master

---

[1] The maximum penalty for a single violation of Rules 1.1 and 1.6 (a) is disbarment, while the maximum penalty for a single violation of Rules 1.16 (a) (3) and 3.5 (d) is a public reprimand.

held an evidentiary hearing, and in October 2022, the Special Master entered his report and recommendation, finding that Breault had violated the provisions of the GRPC with which he was charged and recommending that he be suspended for a period of one month. The State Disciplinary Review Board ("Review Board") then recommended that this Court adopt the Special Master's recommendation.

However, after reviewing the record, this Court concluded that the Special Master failed to adequately analyze Breault's conduct under the framework found in the American Bar Association Standards for Imposing Lawyer Sanctions (1992) ("ABA Standards"), rejected the sanction recommendation, and remanded the case to the Review Board with direction to remand the case to a Special Master to conduct a full analysis of Breault's conduct under the ABA Standards and to issue a new recommendation. See *In the Matter of Breault*, 318 Ga. 127, 141 (897 SE2d 385) (2024) ("*Breault I*"). Specifically, we instructed that this Special Master should (1) conduct a full analysis of the ABA standards, including the duties

violated, Breault's mental state, the potential or actual injury caused by Breault's misconduct, and any aggravating or mitigating factors that might justify an upward or downward departure from the appropriate sanction; and (2) provide a new recommendation as to the appropriate discipline to be imposed. See id. Additionally, we instructed that the Special Master should assess whether any exceptions to Rule 1.6 (a) were applicable. See id. at 138.

Upon remand, Thomas Cauthorn III was appointed as the new Special Master and held a hearing to receive arguments related to the ABA standards and appropriate discipline. On April 16, 2024, the Special Master issued his final report and recommendation, in which he concluded that Breault violated the provisions of the GRPC with which he was charged and recommended that Breault receive a one-year suspension from the practice of law. Subsequently, the Review Board filed its report and recommendation, in which it recommended that this Court adopt the findings and recommendation of the Special Master. On November 12, 2024, Breault filed exceptions to the Review Board's report, and on

December 12, 2024, the State Bar filed a response, agreeing with the Special Master's findings and recommended discipline.

Upon careful consideration of the record, the new report and recommendation of the Special Master, and analogous cases, we conclude that a six-month suspension is the appropriate sanction. Further, we conclude that Breault's exceptions to the Special Master's report and recommendation are without merit.

1. *The Special Master's Report and Recommendation*

(a) *The Facts*

The Special Master recounted that on October 14, 2015, a man from South Carolina suffered two breaks in his back and a skull fracture after a tractor-trailer struck his truck, which caused the truck to go over the side of a bridge and into the Savannah River. The man and his wife (collectively referred to as "Clients," individually referred to as "Husband" and "Wife") hired a Georgia attorney, C. M., to represent them. C. M. associated lawyers from a personal injury firm, which filed a lawsuit on behalf of the Clients in the District Court for the Southern District of Georgia. However,

C. M. then fired the firm and, with the clients' approval, C. M. associated Breault to act as lead counsel in the case. On June 5, 2017, Breault was admitted pro hac vice to the District Court for the Southern District of Georgia, and the case was set for a trial on June 27, 2017.

In preparing for the trial, Breault came to believe that the Clients needed to pursue a claim based on a traumatic brain injury and learned that the Husband had been treated by a neurologist. Breault contacted the treating physician's office manager to schedule a meeting and deposition with the physician. The office manager informed Breault that the physician would be available for a meeting on June 7, 2017, and available for a deposition on June 15, 2017. On June 7, Breault and C. M. met with the physician and, unbeknownst at the time to Breault or the physician, C. M. made an audio recording of this meeting. During this meeting, the physician described the Husband's purported brain injury as "all kind of speculative" and made remarks casting doubt on the possible brain injury claim. Following this meeting, on June 14, 2017, Breault

5

contacted the office manager and canceled the deposition. On June 20, 2017, Breault had another telephone conversation with the office manager regarding whether the physician would be available to testify at trial. The office manager informed Breault that the physician would not be able to testify because of his workload, and Breault responded in a threatening manner by stating that the physician would have to do a deposition or Breault would subpoena him for trial. The following day, the defendants in the suit filed a motion to revoke Breault's pro hac vice admission because his actions violated the court's guidelines for courtroom conduct and included with the motion an affidavit by the office manager detailing the conversation. Without discussing it with the Clients, Breault filed a response to the defendants' motion to revoke and attached a transcript of the audio recording of the June 7 meeting. Breault also obtained the actual audio recording of the meeting from C. M. and e-mailed it to all counsel in the case and to the court. In his response to the defendant's motion to revoke, Breault admitted that the recording was "attorney work product and includes many insights

6

into how the Plaintiff[s] view every part of this case," and that his actions "tipp[ed] the 'playing field' in favor of the Defendants by disclosing this work product," but that he "fe[lt] the esteem and confidence of this Honorable Court are more important." Later at a disciplinary hearing held by the first Special Master, Breault admitted to making the disclosures public to make the defense counsel look like "a disingenuous a\*\*hole." Although the district court denied the defendants' motion to revoke, it specifically found that the disclosure of the conversation was unnecessary and damaging to the Clients' case.

Subsequently, on June 27, 2017, the date on which the trial was originally scheduled, the district court allowed Breault to add a neuropsychologist to the Clients' witness list and ordered that the neuropsychologist be deposed by the middle of August 2017. The addition of the neuropsychologist resulted in the district court continuing the trial from June 27 to October 30, 2017. On July 6, 2017, defense counsel asked Breault to provide suggested dates for the neuropsychologist's deposition. After receiving no response from

7

Breault, defense counsel asked Breault again to provide suggested dates and then volunteered to contact the neuropsychologist's office regarding dates for the deposition. On July 20, 2017, Breault responded to defense counsel, stating that August 14, 2017, would work for the deposition. When defense counsel replied to ask about the time, Breault told him 10:00 a.m. However, Breault had not confirmed this date and time with the neuropsychologist. And, upon later learning that Breault had told defense counsel that the deposition had been scheduled for this date, the neuropsychologist informed the parties that he would not be available that day. In response, Breault told defense counsel that he would ask the court for more time to schedule the deposition, but he never filed the request.

On August 16, 2017, the Clients discharged Breault by a hand-delivered letter, instructing him to cease communication with them and refer all communications to C. M., and to file the appropriate documents to withdraw from the case. On the following day, Breault went to the Clients' home in South Carolina unannounced. During

8

this visit, Breault called into question the competency of the Clients' remaining counsel and told them that they would lose out on funding for medical treatment should he be removed from the case. After Breault left the Clients' home, the Wife sent him a text message informing him that she did not want him to represent them. Breault acknowledged receipt of this message, and told the Wife that he would file withdrawal paperwork on the following day. However, Breault failed to file his paperwork and, instead, advised the Husband to seek legal advice from a litigation funding company and reached out to the Wife to request her to attend a focus group regarding the case.

The Clients then filed a motion to revoke Breault's pro hac vice admission, in which they alleged that Breault had lied about scheduling the neuropsychologist's deposition, made an unannounced visit to the Clients' home after he had been terminated as their attorney, and had invited the Clients to attend a focus group after receiving the termination letter. Fifty-four days after he had been discharged as counsel, Breault filed a response to the Clients'

motion to revoke, again disclosing confidential information that he gained in the course of his representation of the Clients. Specifically, Breault disclosed that he had a disagreement with C. M. regarding a potential $90,000 loan to pay for evaluation and treatment of the Husband, that he advised the Husband to contact a litigation funding company, and that the Husband had followed his advice and obtained an opinion from the company.

On October 11, 2017, the district court determined that the parties could not proceed to trial as scheduled because of the serious allegations raised in the Clients' motion to revoke. Instead, the district court scheduled a disciplinary hearing regarding Breault's conduct for October 30, 2017, which was the date the trial was supposed to commence. Following the October 30 disciplinary hearing, Breault finally filed his withdrawal paperwork, and the district court entered a Disciplinary Order, in which it found that Breault had violated several provisions of the GRPC and that his disclosures of the Clients' protected information had been damaging to the Clients, and revoked Breault's pro hac vice admission.

(b) *Rules Violated*

Based on these facts, the Special Master concluded that Breault violated Rule 1.1[2] by his deliberate disclosure of confidential information, his handling of the physician's deposition, and his post-termination advice to the Husband; Rule 1.6 (a)[3] by disclosing protected information gained in his professional relationship with his clients in two public court filings; Rule 1.16 (a) (3)[4] by his failure to withdraw from the representation upon termination; and Rule 3.5 (d)[5] by engaging in conduct intended to disrupt the tribunal, including disclosing the Clients' confidential information, failing to schedule the deposition, making misleading statements regarding the deposition, and refusing to withdraw from the case.

---

[2] Rule 1.1 imposes the duty of competence on a lawyer representing a client.

[3] Rule 1.6 (a) states in pertinent part that "[a] lawyer shall maintain in confidence all information gained in the professional relationship with a client[.]"

[4] Rule 1.16 (a) (3) states in pertinent part that a lawyer "shall withdraw from the representation of a client if . . . the lawyer is discharged."

[5] Rule 3.5 (d) provides in pertinent part that "[a] lawyer shall not, without regard to whether the lawyer represents a client in the matter . . . engage in conduct intended to disrupt a tribunal."

11

Additionally, as for Rule 1.6 (a), the Special Master concluded that the two exceptions that Breault asserted—the implied authority exception in Rule 1.6 (a)[6] and the lawyer's right to respond to allegations exception in Rule 1.6 (b) (1) (iii)[7]—were not applicable for either disclosure. As for the implied authority exception, the Special Master relied on *State v. Ledbetter*, 318 Ga. 457 (899 SE2d 222) (2024) (rejecting the State's argument that the defendant had implicitly waived attorney-client privilege and authorized the disclosures because his lawyer intended the disclosures to benefit the defendant), and, in doing so, the Special Master rejected Breault's argument that his disclosure of the audio recording of the meeting with the physician was not a violation of Rule 1.6 (a) because it was "helpful" to the Clients. Further, the Special Master

[6] The implied authority exception allows "disclosures that are impliedly authorized in order to carry out the representation[.]" See Rule 1.6 (a).

[7] The exception in Rule 1.6 (b) (1) (iii) provides that a lawyer may reveal confidential information which the lawyer reasonably believes necessary "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client[.]"

12

found that the implied authority exception was not applicable to the disclosures in Breault's response to the Client's motion to revoke because Breault had been terminated prior to filing this response and lacked any type of authority to make disclosures of protected information. As for the exception in Rule 1.6 (b) (1) (iii), the Special Master found that the disclosure of the Clients' protected information in Breault's response to the defendants' motion to revoke was not reasonably necessary to respond to the allegations that he had been abusive and threatening in his telephonic interactions. The Special Master also found that Breault's disclosure of the Clients' protected information in response to the Clients' motion to revoke was not reasonably necessary, as he had already been discharged by the Clients and there was no need for him to file a public response brief.

(c) *ABA Standards*

After finding that Breault violated the provisions of the GRPC with which he was charged, the Special Master applied the framework set out in the ABA Standards, which provide that, when

13

imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. The Special Master concluded that by violating Rule 1.1, Breault violated the duty that lawyers owe to their clients to provide competent representation; by violating Rule 1.6 (a), Breault violated the duty that lawyers owe to their clients to keep client information confidential; by violating Rule 1.16 (a) (3), Breault violated the duty that lawyers owe as professionals to timely withdraw from representation when terminated; and by violating Rule 3.5 (d), Breault violated the duty that lawyers owe to the legal system. In assessing Breault's mental state, the Special Master found that Breault acted both knowingly and intentionally with respect to his violations of the Rules by knowingly and intentionally disclosing the Clients' protected information, knowingly and intentionally misleading opposing counsel regarding the deposition, and knowingly and intentionally failing to withdraw his representation

14

after his termination. In assessing the injury caused, the Special Master found that the Clients suffered actual and potential injury by Breault's incompetent representation—which led to their protected information being unnecessarily disclosed and delays in their case—and by continuing to act as their attorney after he had been discharged, as he continued to improperly disclose the Clients' protected information at this time.

As for aggravating circumstances, the Special Master found that seven out of the 11 aggravating factors set forth in ABA Standard 9.22 applied: dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary proceedings; refusal to acknowledge the wrongful nature of conduct; vulnerability of the victim; and substantial experience in the practice of law. See ABA Standard 9.22 (b), (c), (d), (e), (g), (h), and (i). Regarding the bad faith obstruction of the disciplinary proceedings factor, the Special Master specifically noted that Breault was initially "non-responsive, repetitive, and sarcastic" during the disciplinary hearings, made baseless accusations against

15

the State Bar for not being "forthright" with certain evidence, and failed to timely respond to the State Bar's interrogatories and requests for documents. Additionally, the Special Master concluded that out of the 13 mitigating factors set forth in ABA Standard 9.32, only two applied, as Breault did not have a prior disciplinary record and had been sanctioned by the district court for the same conduct. See ABA Standard 9.32 (a) & (k).

(d) *Recommended Discipline*

Although the Special Master noted that "[t]he application of the ABA Standards show that [Breault] is subject to disbarment for the violations of Rule 1.6," the Special Master ultimately recommended that Breault receive a one-year suspension from the practice of law. In doing so, the Special Master relied on *In the Matter of Skinner*, 295 Ga. 217 (758 SE2d 788) (2014), in which the attorney posted confidential client information on the Internet and the Court imposed a public reprimand. The Special Master distinguished Breault's case, noting that, in *Skinner*, there was only one applicable aggravating factor and five factors in mitigation, see

16

295 Ga. at 218-219, whereas here, Breault was found to have intentionally violated several additional rules. Thus, the Special Master concluded that "[g]iven the difference in the balance of the aggravating and mitigating factors in *Skinner* and the balance in this case, *Skinner* leads . . . to the conclusion that a sanction more serious than a public reprimand is appropriate in this case."

2. *The Review Board's Report and Recommendation*

Breault filed exceptions to the Special Master's report and recommendation for the Review Board's consideration, requesting that the entire case against him be dismissed. However, the Review Board adopted the findings of the Special Master, determined that the Special Master's conclusions of law were correct, and agreed with the Special Master's recommendation that Breault receive a one-year suspension for his violations of the GRPC provisions.

3. *Breault's Exceptions*

On November 12, 2024, Breault filed exceptions to the Review Board's report, arguing that the Special Master erred by refusing to conduct a de novo evidentiary hearing to establish a new record; by

17

finding that the exceptions to Rule 1.6 (a) were inapplicable; by finding that Breault violated Rule 1.16 (a) (3) because he should have been charged with Rule 1.16 (c) (providing that "[w]hen a lawyer withdraws it shall be done in compliance with applicable laws and rules"); and by making an erroneous factual finding concerning one of Breault's improper disclosures of personal client information. Breault also asserts that he is being punished for exercising his rights and that the claims against him are spurious.[8] As explained in our analysis section below, we reject Breault's arguments.

4. *Analysis*

After consideration of the record in this matter, we agree with the Special Master's determination that Breault's conduct violated Rules 1.1, 1.6 (a), 1.16 (a) (3) and 3.5 (d), and that neither the implied

---

[8] Specifically, Breault, who is representing himself in this disciplinary matter, argues: "I (genuinely) apologize if I offend your sensibilities with some of my word choices. It's English, and I have a Right to Free Speech. And if the glove fits, and it's a bulls**t case, then I'm going to speak the truth."

18

authority exception nor the lawyer's right to respond to allegations exception is applicable regarding Breault's violation of Rule 1.6 (a).

And in agreeing with the Special Master's determination that Breault violated the GRPC provisions with which he was charged, we reject the arguments that Breault presents in his brief. As for Breault's argument regarding establishing a new record, we did not impose such a requirement in *Breault I*, but rather directed the Special Master to apply the ABA standards based on "the record as a whole" and emphasized certain evidence in the existing record that the Special Master should consider in applying the ABA Standards. *Breault I*, 318 Ga. at 139-141. As for Breault's argument that the Special Master erred in finding the exceptions to Rule 1.6 (a) inapplicable, we conclude that the Special Master specifically addressed the implicitly authorized exception and the lawyer's right to respond to allegations exception regarding both disclosures—i.e., Breault's response to the defendants' motion to revoke and Breault's response to the Clients' motion to revoke—and properly found neither exception was applicable because the Clients did not

19

implicitly authorize the disclosures and the disclosures were not reasonably necessary to defend against any of the allegations against him. As for Breault's argument that the State Bar was required to charge him with violating Rule 1.16 (c) rather than Rule 1.16 (a) (3), we note that the State Bar alleged that he failed to effectuate his withdrawal rather than that he improperly withdrew and, therefore, charged Breault with the proper GRPC violation. Lastly, with regard to Breault's argument that the Special Master erroneously found that the treating physician stated that the Husband's brain injury was speculative, as an initial matter, we note that this finding does not affect the conclusion that Breault improperly disclosed personal client information by sharing the transcript and audio recording of the June 7 meeting in violation of Rule 1.6 (a), nor does it have any effect on the conclusions that the exceptions in Rule 1.6 (a) and Rule 1.6 (b) (1) (iii) are not applicable.

Further, based on the record,[9] we cannot say that the Special Master's factual finding is erroneous.

Further, we agree with the Special Master's application of the ABA Standards and findings that Breault's conduct violated the duty that lawyers owe to their clients to provide competent representation, to keep client information confidential, and to timely withdraw from representation when terminated, and, by causing delays in the trial and making misrepresentations to opposing counsel, Breault's conduct also violated the duty that lawyers owe to the legal system; that Breault acted knowingly and intentionally; that Breault's conduct—including his disclosures of personal client information, failure to schedule the deposition, and failure to withdraw from the case—caused injury to his clients; and that seven out of the 11 aggravating factors are present, whereas only two factors in mitigation are applicable. Thus, given these findings

---

[9] Breault claims that a review of the transcript and audio of the June 7 meeting would show that this factual finding was erroneous, but Breault failed to tender the transcript or audio into evidence at the hearing. For the same reasons, we reject Breault's argument that the Special Master erred by failing to review the transcript or audio of the June 7 meeting.

which are supported by the record, we reject Breault's contention that he is being punished for asserting his rights.

In assessing the Special Master's recommendation of a one-year suspension, we note that this Court has not decided many disciplinary matters concerning the improper and intentional disclosure of personal client information in violation of Rule 1.6 (a). However, as detailed by the Special Master, this violation was present in *Skinner*, where this Court accepted the attorney's voluntary petition for a public reprimand. But, while recognizing the need to impose consistent sanctions for similar disciplinary matters, we agree with the Special Master that a more severe punishment is warranted in Breault's case because of the additional aggravating circumstances and his additional violations of the GRPC. The sanction here should be "sufficient to penalize the offender for his wrongdoing, deter other attorneys from engaging in similar behavior, and inform the general public that the courts will maintain the ethics of the profession." *Breault I*, 318 Ga. at 136. That said, this case does not seem as severe as *In the Matter of*

*Farmer*, 307 Ga. 307 (835 SE2d 629) (2019), where the attorney violated Rule 1.6 (a) and this Court imposed disbarment, as the attorney in that case was found to have violated nine additional GRPC provisions and was found liable in a civil Racketeer Influenced and Corrupt Organizations action, see id. at 309-310, whereas Breault was found to have violated only four additional rules. Given this range, Breault's conduct appears to be more like that seen in *Skinner* than in *Farmer*. Therefore, in distinguishing Breault's case from our recent cases concerning Rule 1.6 (a) violations, considering the Special Master's application of the ABA Standards, and reiterating that the maximum penalty for two of the GRPC that Breault violated—Rules 1.1 and 1.6 (a)—is disbarment, we conclude that a six-month suspension is appropriate in this case.[10]

---

[10] Some members of this Court believe that a one-year suspension would be supported by the record here where Breault has engaged in a series of escalating misconduct when challenged—first, by defense counsel and later by his own clients and co-counsel—and seven of the 11 aggravating factors are present. Moreover, Supreme Court Rule 7 provides that "[p]ersonal remarks which are discourteous or disparaging to opposing counsel or to any judge are

Accordingly, it is hereby ordered Christopher Ryan Breault be suspended from the practice of law for six months. The suspension based on this opinion will take effect as of the date this opinion is issued and will expire by its own terms six months later. Because there are no conditions on Breault's reinstatement other than the passage of time, there is no need for Breault to take any action either through the State Bar or through this Court to effectuate his return to the practice of law. Breault is reminded of his duties pursuant to Bar Rule 4-219 (b).

*Six-month suspension. All the Justices concur.*

strictly forbidden, whether oral or written, and may be cause for sanctions. Nothing in this rule affects the Court's inherent authority to sanction attorneys or parties before this Court." At least some of us believe that the way Breault has conducted himself in this Court would further support a longer suspension.

Decided March 4, 2025 — Reconsideration denied March 31, 2025.

Suspension.

*Paula J. Frederick, General Counsel State Bar, Russell D. Willard, General Counsel State Bar Designate, William D. NeSmith III, Deputy General Counsel State Bar, William V. Hearnburg, Jr., Andreea N. Morrison, Assistant General Counsel State Bar*, for State Bar of Georgia.