**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the
# Supreme Court of Georgia

No. S26Y0257
IN THE MATTER OF CHARLES M. DALZIEL, JR.

Decided: May 19, 2026

PER CURIAM.

This disciplinary matter is before the Court on the report and recommendation of Special Master Adam M. Hames, who recommends that Charles M. Dalziel, Jr. (State Bar No. 203730) be suspended for at least six months for his conduct in this matter and that he not be reinstated until a licensed psychologist or psychiatrist certifies that he is mentally competent to practice law. We previously imposed a six-month suspension on Dalziel with the same condition for reinstatement. See *In the Matter of Dalziel*, 322 Ga. 212 (2025) ("*Dalziel I*"). Because Dalziel has not yet complied with this condition for reinstatement, he remains suspended.

In the current matter, the State Bar filed a formal complaint against Dalziel, who has been a member of the State Bar since 1980, charging him with violating Rules 1.6(a),[1] and 3.1(a)[2]

---

[1] Rule 1.6(a) states in pertinent part that "[a] lawyer shall maintain in confidence all information gained in the professional relationship with a client[.]" The maximum sanction for a violation of this Rule is disbarment.

[2] Rule 3.1(a) provides that "[i]n the representation of a client," a lawyer shall not "file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another[.]" The maximum sanction for a violation of this Rule is a public reprimand.

and (b)[3] of the Georgia Rules of Professional Conduct ("GRPC" or "Rules") by disclosing confidential client information and by filing and litigating a frivolous lawsuit designed to harass a law firm ("the Law Firm") into paying his attorney fees. Dalziel failed to respond to the formal complaint and the Special Master granted the State Bar's motion for default, such that the allegations alleged in the formal complaint were deemed admitted. The Special Master then held a hearing, which Dalziel failed to attend, on aggravating and mitigating factors and issued his report and recommendation. Neither party has filed exceptions in this Court.

After our review of the record, we conclude that the appropriate sanction is a six-month suspension with the condition that Dalziel not be reinstated until a licensed psychologist or psychiatrist certifies that he is mentally competent to practice law. Further, we conclude that this suspension should run consecutive to Dalziel's current suspension, such that this six-month suspension will begin after Dalziel provides a certification that he is mentally competent to practice law, as required by *Dalziel I.*

1. *Special Master's Report and Recommendation*

(a) *Findings of Fact*

Based on the facts in the formal complaint, which were deemed admitted by Dalziel's default, and the evidence introduced at the hearing on aggravating and mitigating factors, the Special Master recounted the following. Dalziel's client in this matter first sought legal assistance for a securities matter from

---

[3] Rule 3.1(b) provides that "in the representation of a client," a lawyer shall not "knowingly advance a claim or defense that is unwarranted under existing law, except that the lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification or reversal of existing law." The maximum sanction for a violation of this Rule is a public reprimand.

the Law Firm. The Law Firm could not assist but provided the client with a list of three attorneys who had experience in securities matters. Dalziel was on that list, and the client subsequently hired Dalziel to represent him. At the time, Dalziel and his law practice were in "an extremely dire financial situation." After the client did not pay Dalziel for his services, Dalziel filed a lawsuit against the Law Firm and several of the Law Firm's attorneys, alleging that the Law Firm had hired him to represent the client and that the Law Firm and its lawyers were therefore responsible for his fees. Dalziel's lawsuit had no basis in law or fact and was filed to try to harass the Law Firm into paying Dalziel's attorney fees. Further, in his verified complaint, Dalziel disclosed confidential information about the client's matter.

Through counsel, the Law Firm filed a motion to dismiss, which the trial court granted. The dismissal was affirmed by the Court of Appeals, and this Court denied petition for writ of certiorari. The Special Master further explained that, at the evidentiary hearing, counsel for the Law Firm testified that the Law Firm paid $95,572.58 in legal fees to defend itself against Dalziel's "frivolous" lawsuit and that Dalziel sent lawyers at the Law Firm threatening emails and showed up at their offices which resulted in him being added to the Law Firm's building security list to refuse him admission. Counsel also described dealing with Dalziel "as a juxtaposition of him being polite and professional [while] also being aggressive and untethered to facts of reality."

Dalziel's behavior led to the State Disciplinary Board initiating a grievance against him. In his response to the grievance, Dalziel again unnecessarily disclosed confidential information about his representation of the client, including the legal strategy that he employed as well as the content of attorney-client communications.

3

Additionally, in his response, Dalziel also threatened that the Law Firm must report a contingent liability of 68 million dollars to its auditor and leveled personal attacks on the trial judge who heard his case, the three Court of Appeals judges who heard his case, and two Justices of this Court. Dalziel accused the State Disciplinary Board of being "ignorant" of the law.

(b) *Rule Violations*

Based on this conduct, the Special Master concluded that, through his default, Dalziel admitted to his violation of Rule 1.6(a) when he disclosed confidential client information in his response to the grievance filed against him, and that the violation was also supported by the record. The Special Master also concluded that, through his default, Dalziel admitted to his violation of Rule 3.1(a) and (b) by filing and litigating a frivolous lawsuit designed to harass the Law Firm into paying attorney fees to Dalziel, and the record supported a finding that Dalziel violated this Rule.

(c) *ABA Standards*

In considering the appropriate level of discipline, the Special Master applied the framework set out in the ABA Standards, which provide that, when imposing a sanction, "a court should consider the following factors: (a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." ABA Standard 3.0. The Special Master determined that Dalziel violated his duty to his client by unnecessarily revealing confidential information relating to his representation and that Dalziel violated his duty not to abuse the legal system. In addressing Dalziel's mental state, the Special Master concluded that Dalziel's conduct was knowing and intentional and he violated the Rules in an attempt to benefit himself. In addressing

4

the injury caused, the Special Master concluded that Dalziel's disclosure of the client's confidential information which was not responsive to any claim or defense could cause potential injury to the client, but that because the client was not called as a witness during the hearing on aggravating and mitigating circumstances, the extent of any actual injury is unknown.

The Special Master also concluded that several aggravating factors set forth in ABA Standard 9.22 applied, including prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, refusal to acknowledge the wrongful nature of his conduct, and substantial experience in the practice of law. See ABA Standard 9.22(a), (b), (c), (d), (g), and (i). As for mitigating factors, the Special Master opined that while the record demonstrated that Dalziel may have been experiencing personal and emotional problems at the time of these events, because of his default and failure to attend the hearing, there was no direct evidence to support this factor. See ABA Standard 9.32(c). See also *In the Matter of Bell*, 313 Ga. 615, 617–18 (2022) (declining to consider personal and emotional issues in mitigation where the respondent failed to offer evidence that any mental conditions impacted her ability to practice law). The Special Master did note, however, that during the prior disciplinary matter, the State Bar introduced a psychological evaluation that demonstrated that Dalziel has a long history of significant mental health issues and alcohol abuse. See *Dalziel I*, 322 Ga. at 214.

(d) *Recommended Discipline*

The Special Master then determined that because the maximum sanction for a Rule 3.1 violation is a public reprimand, the focus of his disciplinary recommendation was Dalziel's violation of Rule 1.6(a), and concluded that Dalziel should be suspended for no less than six months. In reaching this conclusion, the Special

5

Master explained that "[t]here is a fundamental difference between unprofessional behavior, how a lawyer should act, and unethical behavior, what a lawyer shall not do in violation of the GRPC" and that when Dalziel's "verbosity and hyperbole" are removed from the situation, the recommended sanction is "sufficient to penalize the offender for his wrongdoing, deter other attorneys from engaging in similar behavior, and inform the general public that the courts will maintain the ethics of the profession." *In the Matter of Breault*, 318 Ga. 127, 136 (2024). Additionally, the Special Master recommended that Dalziel not be reinstated until a licensed psychologist or psychiatrist certifies that he is mentally competent to practice law.

(2) *This Court's Analysis and Recommendation*

Having carefully reviewed the record, we agree that Dalziel violated Rule 1.6(a) on two separate occasions by intentionally and unnecessarily disclosing confidential information related to the representation of his client and that Dalziel's violations were aggravated by his prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, his refusal to acknowledge his wrongful conduct, multiple offenses, and his substantial experience as a lawyer. However, we question whether Dalziel's conduct violated Rules 3.1(a) and (b), as his frivolous lawsuit against the Law Firm was not filed "[i]n the representation of a client" or "on behalf of the client" as required by this Rule. But because we conclude that a six-month suspension is the appropriate sanction for Dalziel's multiple violations of Rule 1.6(a) and that the additional Rule 3.1 violations—which carry the maximum sanction of a public reprimand—would not change the sanction in this case, we need not resolve this issue. See *Dalziel I*, 322 Ga. at 217 (imposing a six-month suspension for Dalziel's violation of Rule

6

1.15(I)(c) and pretermitting consideration of whether Dalziel violated Rules 1.6(a) and 1.16(d) "because it would not change the appropriate discipline").

In determining that a six-month suspension is appropriate for Dalziel's Rule 1.6(a) violation, we note that this Court has not addressed many Rule 1.6(a) violations and, in the matters concerning such a violation, a wide range of sanctions have been imposed. See, e.g., *In the Matter of Breault*, 321 Ga. 338, 347 (2025) *("Breault II")* (six-month suspension for attorney who violated Rules 1.1, 1.6(a), 1.16(a)(3), and Rule 3.5(d)); *In the Matter of Farmer*, 307 Ga. 307, 310 (2019) (disbarment for attorney who violated Rules 1.2(a), 1.6(a), 1.8(b), 3.1, 3.2, 3.4, 3.5(d), 4.4, 8.4(a)(1), and 8.4(a)(4)); *In the Matter of Skinner*, 295 Ga. 217, 219 (2014) (public reprimand for attorney who violated Rules 1.4 and 1.6). Looking at these cases for guidance, we conclude that the instant matter is distinguishable from *Farmer*—where we imposed disbarment—because in that case, the attorney violated nine additional Rules; was liable in a civil Racketeer Influenced and Corrupt Organizations action for multiple acts of racketeering, including attempted theft by extortion, attempted bribery, intimidation of a court officer, and influencing witnesses; submitted more than 500 frivolous filings in his client's case; directed his client to refuse to participate in a custody evaluation; and willfully refused to appear at a contempt hearing, which resulted in him being held in contempt. See 307 Ga. at 308–10. We also conclude that the instant matter is distinguishable from *Skinner*—where we imposed a public reprimand—because in that case "a number of mitigating circumstances" were applicable, including that the attorney had no prior disciplinary history, lacked a dishonest or selfish motive, accepted responsibility for her misconduct, was cooperative in the disciplinary proceedings, expressed remorse, and was experiencing personal and emotional problems

7

during the relevant time. See 295 Ga. at 219.

Instead, this case is more like *Breault II*, where we imposed a six-month suspension. In that case, the attorney improperly and unnecessarily disclosed damaging confidential client information to the district court on two occasions in response to opposing counsel's motions to revoke his pro hac vice admission. See 321 Ga. at 340–42. The attorney also engaged in disruptive behavior, including making an unannounced visit to his clients' home after they terminated his representation and continued attempts to contact them. See id. Further, the Special Master presiding over that matter determined that seven out of the 11 aggravating factors set forth in ABA Standard 9.22 applied. See id. at 344. Here, Dalziel also improperly and unnecessarily disclosed confidential client information on two separate occasions, engaged in disruptive behavior, and several aggravating factors are applicable. Given the similarities between Dalziel's conduct and the conduct of the attorney in *Breault II*, we conclude that a six-month suspension is appropriate for Dalziel's misconduct as well. Further, although the attorney in *Breault II* violated additional Rules, in mitigation he had no prior disciplinary history and had been sanctioned by the district court for the same conduct. See ABA Standard 9.32(a) & (k). Here, because of Dalziel's default and failure to participate in the hearing, the Special Master did not consider and thus did not identify any factors in mitigation. Moreover, we note that neither the State Bar nor Dalziel have filed exceptions to the Special Master's report and recommendation of a suspension of at least six months.

Therefore, we order that Dalziel be suspended from the practice of law for six months and, given his conduct, that he not be reinstated until a licensed psychologist or psychiatrist certifies that he is mentally competent to practice law. We further order

8

that this suspension will run consecutively to his current suspension, such that it will commence after Dalziel has complied with the conditions for reinstatement imposed in *Dalziel I*, which also requires him to obtain a certification that he is mentally competent to practice law. See *In the Matter of Lang*, 295 Ga. 220 (2014) ("*Lang II*") (imposing an additional one year suspension for an attorney based on his Rule violations to run consecutively to attorney's ongoing suspension).[4] When Dalziel believes that the conditions for his reinstatement imposed in this matter have been met, he shall demonstrate compliance in a petition for reinstatement submitted to the Review Board, which will then issue a report and recommendation to this Court. Dalziel shall not undertake the practice of law until this Court issues an opinion granting his petition for reinstatement. Dalziel is reminded of his duties under Bar Rule 4-219(b).

*Six-month suspension with conditions for reinstatement. All the Justices concur, except Peterson, C.J., and Pinson, J., not participating.*

---

[4] We note that although we determined in *Lang II* that the attorney's second suspension should run consecutive to the first suspension, we did not consider whether the attorney should first be required to comply with the conditions for reinstatement we imposed in *In the Matter of Lang*, 292 Ga. 894 (2013), which included obtaining a certification from a licensed psychologist or psychiatrist certifying that the attorney is fit to return to the practice of law. However, here, given Dalziel's conduct in this matter and evidence of his mental health issues and alcohol abuse, as detailed in *Dalziel I*, we expressly require that he satisfy the mentally-competent certification requirement for reinstatement imposed in *Dalziel I* before the suspension imposed in this matter begins to run.